Argued and submitted April 10, affirmed July 6, 1981

PARMELE et al,
*Appellants,*
*v.*
CIVIL SERVICE BOARD OF PORTLAND et al,
*Respondents.*

(No. A8002-00823, CA 18867)

630 P2d 897

Jack D. Howe, Portland, argued the cause for appellants. With him on the briefs was Kirkpatrick, Howe and Arreola, Portland.

Richard A. Braman, Portland, argued the cause and filed the brief for respondents.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

THORNTON, J.

## THORNTON, J.

Petitioners appeal from a trial court "order and judgment" in a writ of review[1] proceeding upholding the Civil Service Board's conclusion that, under a 1954 resolution, the Board was authorized to certify to the City of Portland Water Bureau a list of persons eligible for appointment to four Water Service Inspector II positions by virtue of their scores on a competitive examination in addition to certifying petitioners, who, because of the resolution, were not required to take an examination to be considered for those positions. We affirm.

The essential facts are as follows:

In 1954, the City of Portland reorganized its Water Bureau. Under the reorganization, the single class of water service inspectors was subdivided into three grades and the duties of each grade were separately defined. At the time, there were 29 people, including the five petitioners, employed in that department, who were assigned various duties at the discretion of management. The duties of any given individual, however, did not coincide precisely with those assigned to any one of the new grades of inspector, but, rather, an individual was likely to be performing tasks which, following reclassification, fell within the duties assigned to at least two grades of inspector. The Board proposed to classify all 29 employes as Water Service Inspector I's and sought to conduct promotional examinations for grades II and III. The union objected to this scheme on the ground that, because all of the 29 employes were qualified by virtue of having passed an examination for water service inspector to perform any duty within the department, they should not be required to take an examination in order to be promoted to a higher grade.

The Board referred the matter to the City Attorney and, on November 23, 1954, passed a resolution, which is set out in the Board minutes as follows:

---

[1] The action was brought originally as a petition for a writ of mandamus and alternate writ of review, both of which were issued. Petitioners do not specifically assign as error the vacation of the writ of mandamus, but that is the essence of their first assignment. Since we hold that the resolution does not compel the Board to submit only petitioners' names for consideration by the Bureau, it follows that the Board could not be required to act in that manner. ORS 34.110.

"The Board next considered a communication from Oregon Public Employees Council #12 requesting reconsideration of the Board's order of September 28, 1954, that the positions in the new class of Water Service Inspector II be filled by examination. After a report by the Secretary that he had received an opinion from the City Attorney stating that 'any permanent employee given duties formerly classified as Water Service Inspector may not be made to take an examination, promotional or otherwise, as a condition precedent to the right to continue those duties,' by unanimous consent the Board amended its order of September 28, 1954, * * * regarding examinations for the new classes of Water Service Inspector II and Water Service Inspector III. It was further ordered that the *following employees be granted status in the classes of Water Service Inspector I, II and III and that the appointing authority be notified that any of the following men may be appointed to positions* in the class of Water Service II and III without examination: * * *." [Alphabetical list of the 29 former Water Service Inspectors omitted; emphasis added.]

■    Petitioners' principal contention is that, in the language emphasized above, the word "may" actually was intended to mean "shall"; in other words, they argue that the four vacant Water Service Inspector II positions should have been filled from the five names remaining on the 1954 list before any competitive examination was given or any list of applicants, qualified because of the examination results, was certified to the Water Bureau. In support of this contention, they point to the past practice of the Board and the Bureau, which they submit is in accordance with their interpretation. The record shows that, prior to 1967, six promotions were given, all to people on the 1954 list. In 1967, a competitive examination was given and between 1967 and 1979 eleven more promotions were made, nine of which were of people on the eligibility (as opposed to the 1954) list. At one of the 1979 hearings on this matter, one of the commissioners asked:

"In other words, there has never been a point during that 25 years, to anyone's recollection, that there was an opening and the Bureau filled that opening from the outside over the objections of the gentlemen on the [1954] list?"

Mr. Goebel, an assistant administrator in the Water Bureau, conceded that, as far as anyone knew, each of the

nine appointments made from the eligibility list was made only after the remaining people on the 1954 list had been given a first refusal right to the appointment. He further stated, however:

"The pattern, in fact, has been as you described. That does not mean that the Bureau did not consider the matter to be permissive. That is to say that simply because a certain individual was promoted, [it] does not necessarily mean that wasn't the desire of the Bureau and, therefore, was permissive on us [sic]."

The Board then certified a list of the top six eligible applicants and stated at the bottom of the list that the five petitioners could also be considered. The four positions were filled with two people from each group. The trial court found the issues to be two-fold and held 1) that the language of the November 1954 minutes summarizing the resolution was permissive and permitted the Bureau to consider applicants from the eligibility list as well as the members of the 1954 list and 2) that the Bureau's past practice was not binding on it.

By the 1954 resolution, petitioners were accorded "dual status," a term first coined in *Drake v. City of Portland,* 172 Or 558, 143 P2d 213 (1943). In *Drake,* the Water Bureau sought to reclassify certain of its clerical positions, including one designated as "Clerk, Class C, Rank D." The city charter section in effect at the time (currently codified as § 4-110) provided:

"* * * no person shall, without examination, be transferred to or assigned to perform the duties of any position in the classified civil service unless he shall have been appointed to the position from which such transfer is made as the result of an open competitive examination equivalent to that required for the position to which the transfer is made, or unless he shall have served with fidelity for at least six years in a like position in the service of the city."

After analyzing this and related provisions, the court held:

"The appellants point out that since twenty-seven of the plaintiffs passed examinations for Clerk, Class C, Rank D, the twenty-seven are eligible under § 106 [current § 4-110] of the charter just analyzed for transfer to any of the work within the purview of Senior Account Clerk, Account Clerk and Junior Clerk. Those three classifications are merely subdivisions of the work previously

known as Class C, Rank D. * * * Therefore, the respondents say that all * * * employee parties are qualified to perform the work of Senior Account Clerk, Account Clerk and Junior Clerk. We concur in this construction of the rights of the employee parties. We concur because the employee parties, prior to the attacked classification order, had taken examinations which entitled them to perform all of the work now identified by the three new titles. Whether any one of them who is now performing work upon ledgers will be assigned to the Cashier's cage or to work behind the counter, is, of course, *dependent upon the volition of the appointive power.* However, it is no more dependent now upon his volition than prior to the classification order." (Emphasis added.) 172 Or at 591-92.

Prior to 1954, the Board adopted two rules based on this charter section, which provided:[2]

"5010 INTRA-DEPARTMENTAL TRANSFERS. A transfer of an employee from a position in one subdivision of a department to a position in the same class in another subdivision in the same department *may be made at any time by the appointing authority concerned.* All such transfers must be reported to the Civil Service Board.

"5030 INTER-CLASS TRANSFERS. A permanent employee *may be transferred* from a position in one class to a position in another class, transfer being either within one department or between departments providing the Civil Service Board certifies that the examination upon which the appointment of the employee was based was equivalent to that required for the position to which transfer is sought." (Emphasis added.)

We conclude from the foregoing that the "dual status" which petitioners were granted by the 1954 resolution does not include the *right to be preferred* for promotion to those positions of higher grade which their status encompasses; it only gives them the *right to be considered* for such openings without having to take the competitive examination generally required for appointment because, at the time the subclassification of Water Service Inspectors was made, each was qualified by virtue of the examination which earned him the appointment as Water Service Inspector prior to 1954 to be appointed to and perform the

---

[2] The record does not indicate whether these or equivalent rules are still in effect.

duties of a grade II or III position. The exemption from examination merely recognized this state of affairs. It does not, as the emphasized language in the quotation from *Drake* shows, amount to a constraint on the discretion of the appointing authority requiring it to consider first only applicants on the 1954 list. There is nothing in the record to establish, in any event, that the Civil Service Board has any power to compel a city agency to prefer dual status employes to other applicants eligible because of their exam scores. Indeed, such a rule appears contrary to the basic purpose of a civil service system to provide an agency with a choice from among the best qualified applicants available. The language of the 1954 resolution, viewed in this light, is unambiguous and leaves intact the appointive authority's discretion as to whom it hires for a particular position.

■    As their second assignment of error, petitioners contend that the trial court erred in determining that the Water Bureau's past practice of first offering advancement to the dual status holders is not binding on the Board. Insofar as that determination involved a finding of fact that the Board and the Bureau both regarded the practice as permissive, it is conclusive because it is supported by substantial evidence. ORS 34.040(3). Moreover, the practice is not an example of agency construction of a rule to be accorded weight in construing the rule. *Duncan v. Law Enforcement Council,* 37 Or App 119, 123, 586 P2d 398 (1978), *rev den* (1979). Petitioners suggest that the practice estopped the Board from certifying to the Bureau names from the eligible list in addition to submitting the names of the dual status employees, but they do not show how they changed their positions in reasonable reliance on that. *Donahoe v. Eugene Planing Mill,* 252 Or 543, 545, 450 P2d 762 (1969).

Affirmed.